IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
2:11-CV-22-D

| | |
|---|---|
| JARMAINE HALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income benefits ("SSI") on the grounds that he is not disabled. The case is before the court on plaintiff's and the Commissioner's respective motions for judgment on the pleadings (D.E. 27, 30). Both parties filed memoranda in support of their respective motions (D.E. 28, 31). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (D.E. 32). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

## I. BACKGROUND

**A.    Case History**

Plaintiff filed an application for SSI benefits on 13 November 2008 alleging the onset of disability on 21 October 2008. Transcript of Proceedings ("Tr.") 21. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 21. On 3 August 2010, a video hearing was held before an Administrative Law Judge ("ALJ"). Tr. 21, 32-

50. The ALJ issued a decision denying plaintiff's claim on 24 August 2010. Tr. 21-30. Plaintiff timely requested review by the Appeals Council. Tr. 14-17. The Appeals Council denied the request on 27 April 2011. Tr. 1-5. At that time, the decision of the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. Plaintiff commenced this proceeding for judicial review on 11 May 2011, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 3); Compl. (D.E. 4)).

   B.     **Standards for Disability**

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §1382c(a)(3)(D). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The regulations under the Act ("Regulations") provide the following five-step analysis that the Commissioner must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was 35 years old when he filed his application and 37 years old on the date of the hearing. Tr. 29 ¶ 6; 37. He did not complete high school. Tr. 29 ¶ 7 (finding respondent to have a limited education), 38 (plaintiff's testimony at hearing that he did not finish high school);

*see* 20 C.F.R. § 416.964(b)(3) (defining limited education generally as the seventh through eleventh grade level of formal education).

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the filing of his application. Tr. 23 ¶ 1. At step two, the ALJ found that plaintiff has the following medically determinable impairments that are severe within the meaning of the Regulations, 20 C.F.R. § 416.920(c): lumbar degenerative disc disease with radiculopathy; borderline intellectual functioning; and mood disorder. Tr. 23 ¶ 2. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listings. Tr. 24 ¶ 3.

The ALJ determined that plaintiff has the RFC to perform light work,[1] subject to the limitations that he stoop, kneel, crouch, and crawl only frequently; perform simple, routine, and repetitive tasks ("SRRTs"); and not perform work requiring complex decision making, constant change, or dealing with crisis situations. Tr. 25 ¶ 4. At step four, the ALJ found that plaintiff had no past relevant work. Tr. 29 ¶ 5. At step five, the ALJ accepted the testimony of a vocational expert ("VE") and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including cleaner/housekeeper, cashier II, and photo copy machine operator. Tr. 29-30 ¶ 9. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 30 ¶ 10.

---

[1] Specifically, the ALJ found that plaintiff has the ability to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; to stand or walk for a total of 6 hours in an 8-hour workday; and to sit for a total of 6 hours in an 8-hour workday. *See* Tr. 25 ¶ 4; *see also* 20 C.F.R. § 416.967(b); *Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV.c., def. of "L-Light Work." The DOT is available at http://www.oalj.dol.gov/libdot.htm (last visited 6 July 2012).

## II.  DISCUSSION

### A.     Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld.  *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Perales,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla of evidence, but somewhat less than a preponderance.  *Perales,* 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence.  *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*).  In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility.  *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano,* 599 F.2d 597, 599 (4th Cir. 1979).  A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion.  *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B. Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed on the principal grounds that he: (1) failed to find that plaintiff meets Listing 12.05C for mental retardation; (2) improperly rejected findings of a school psychologist; (3) posed an incomplete hypothetical to the VE; and (4) required objective evidence of the degree of plaintiff's pain. Each contention is examined in turn below.

### C. Listing 12.05C

The ALJ's determination at step three that plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments," by its terms, encompasses Listing 12.05C.[2] Tr. 24 ¶ 3. Plaintiff argues that the ALJ's determination is erroneous because, as a matter of law, he does meet Listing 12.05C. The court finds no error in the ALJ's determination.

The listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing not only any substantial gainful activity, but any gainful activity at all. 20 C.F.R. § 416.925(a). Therefore, if a claimant's impairments meet

---

[2] The ALJ does not, however, discuss Listing 12.05C specifically. No such discussion was necessary to confirm that he considered it because, as explained below, the ALJ's analysis at step two makes clear his determination regarding 12.05C. In addition, the ALJ does expressly mention another portion of Listing 12.05, Listing 12.05D.

or medically equal a listing, that fact alone establishes that the claimant is disabled. *Id*. § 416.920(d).

An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Even if an impairment does not meet the criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. § 416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. § 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria).

To meet Listing 12.05C,[3] a claimant must satisfy three requirements. First, he must first

---

[3] Listing 12.05 reads in full:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> Or
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> Or
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> Or
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or

satisfy the introductory diagnostic description for mental retardation. *See* Listing 12.00A. Specifically, the claimant must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," that is, before the age of 22. Listing 12.05. Second, the claimant must have a "valid verbal, performance, or full scale IQ of 60 through 70." Listing 12.05C. Third, the claimant must have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*

Here, it is apparent that the ALJ determined that plaintiff does not meet Listing 12.05C on the grounds that he does not satisfy the first requirement that he have mental retardation. Instead, the ALJ expressly found, at step two, as indicated, that plaintiff has borderline intellectual functioning. Borderline intellectual functioning involves a lesser degree of intellectual deficiency than mental retardation. *See generally Diagnostic and Statistical Manual of Mental Disorders* 48, 740 (4th ed., Text Revision (2000) ("DSM-IV-TR")). Substantial evidence supports the ALJ's determination that plaintiff has borderline intellectual functioning.

This evidence includes the report of Disability Determination Services ("DDS")[4] consulting psychologist James R. Frazier, Ph.D. regarding his 2 December 2008 examination of plaintiff. Tr. 211-14. The ALJ summarizes Dr. Frazier's report in his decision and gave it substantial weight. Tr. 26 ¶ 4. IQ tests conducted by Dr. Frazier indicated plaintiff to have a verbal IQ of 68, a performance IQ of 63, and a full scale IQ of 63. Tr. 213. But Dr. Frazier questioned the extent of plaintiff's effort during the test and found that the data probably

---

4. Repeated episodes of decompensation, each of extended duration.

Listing 12.05.

[4] DDS is a North Carolina state agency that makes decisions on applications for disability under the Social Security program. *See* N.C. Div. of Vocational Rehab. Serv., http://www.ncdhhs.gov/dvrs/pwd/dds.htm (last visited 6 July 2012).

understated plaintiff's level of intellectual functioning. Tr. 212, 213. As the ALJ noted, Dr. Frazier diagnosed plaintiff with "[p]robable" borderline intellectual functioning. Tr. 213; 26 ¶ 4.

Consulting DDS nonexamining psychologists W.W. Albertson, Ed.D. and Nancy Y. Herrera, Ph.D. also determined plaintiff to have borderline intellectual functioning in their Psychiatric Review Technique forms, dated 6 January 2009 and 16 April 2009, respectively. Tr. 220, 251. The ALJ states in his decision that he adopted the findings by these consultants, albeit in the context of his findings on the so-called "paragraph B" criteria (*i.e.*, functional limitations in the areas of activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation).[5] Tr. 25 ¶ 3.

The ALJ also noted that plaintiff "interacted well with the hearing office staff and his representative" and "readily understood questions and provided relevant, coherent answers in a prompt manner" as indications that plaintiff's mental impairments are not as limiting as plaintiff alleges. Tr. 28 ¶ 4. This evidence further supports the ALJ's determination that plaintiff has borderline intellectual functioning.

Plaintiff argues that the second requirement of Listing 12.05C is met because when he was 16 he was given a performance IQ of 67 (*see* Tr. 166) and that the third requirement is met because, as the ALJ found, plaintiff has the additional severe impairments of lumbar degenerative disc disease and mood disorder. The merit of these contentions is immaterial and the court need not address them because, as indicated, satisfaction of all requirements of a listing is required to meet it and the ALJ's determination that plaintiff did not meet the first requirement is lawful. Similarly, because the ALJ found plaintiff's level of intellectual functioning to be above the mental retardation level, the court need not address the sufficiency of his finding that

---

[5] *See* Listing 12.00; 20 C.F.R. 416.920a.

there is no evidence of defects in adaptive functioning prior to age 22, which, as indicated, is one element of the diagnostic description of mental retardation. Tr. 25 ¶ 3.

Plaintiff also argues that the ALJ improperly required that plaintiff satisfy the B criteria to meet Listing 12.05C. This contention is baseless. The ALJ nowhere makes any such statement. As a plain reading of his decision shows, he evaluates these criteria in connection with Listing 12.05D and other listings that, unlike Listing 12.05C, do include the paragraph B criteria as requirements.[6] *See* Tr. 24 ¶ 3.

The court concludes that the ALJ committed no error in not finding that plaintiff meets Listing 12.05C. It accordingly rejects plaintiff's challenge to this portion of the ALJ's decision.

### D. Evaluation of School Psychologist's Report

On 8 February 1990, when plaintiff was 16 years old, a school psychologist performed a a psychological evaluation of him. Tr. 161-65. After summarizing the evaluation, the ALJ states that he gave "[l]imited weight" to it because it "was conducted by the school psychologist and not by a qualified tester." Tr. 25 ¶ 3. The Commissioner concedes that the ALJ's basis for giving the psychologist's report limited weight was in error because the Regulations, 20 C.F.R. § 416.913(a)(2), expressly recognize school psychologists as acceptable medical sources for evaluating mental retardation and borderline intellectual functioning. He argues, however, that the error was harmless. The court agrees with the Commissioner.

The reason is that the school psychologist's report is consistent with the ALJ's determination that plaintiff has borderline intellectual functioning and the substantial evidence supporting that determination. As the ALJ notes in his decision, the IQ tests administered by the school psychologist showed plaintiff to have a verbal IQ of 78, a performance IQ of 67, and a

---

[6] As the ALJ notes, in Listing 12.05, the paragraph B criteria are included in paragraph D, unlike in the other mental disorders listings. Tr. 24 ¶ 3; Listing 12.00A.

full scale IQ of 72. Tr. 25 ¶ 3; 166. These are higher scores than the corresponding scores reported by Dr. Frazier (which were 68, 63, and 63, respectively). The school psychologist concluded that "[i]ntellectually, [plaintiff] is functioning within the upper limits of the deficient range to the borderline range of ability." Tr. 165. Similarly, as discussed, Dr. Frazier's diagnosis was "[p]robable" borderline intellectual functioning. Tr. 213. Thus, both place plaintiff's maximum intellectual ability in the borderline range, as the consulting psychologists did (*see* Tr. 220, 251). It is appropriate, of course, that the focus be on plaintiff's maximum level of intellectual functioning because a claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). Lastly, the ALJ did not reject the school psychologist's report altogether, but simply gave it limited weight, thereby mitigating his error regarding the permissibility of relying on it fully.

The court concludes that the ALJ's attribution of limited weight to the school psychologist's report on improper grounds was harmless error. The court therefore rejects this error as a basis for reversal of the ALJ's decision.

### E. Hypothetical to VE

Plaintiff argues that the hypothetical posed to the VE was incomplete because it omitted the limitation plaintiff claims he has in his mathematical ability. As a result, the mathematical demands of the jobs the VE indentified plaintiff has being able to perform purportedly exceed his mathematical ability. The court finds that the ALJ committed no reversible error.

As plaintiff argues, there is evidence that his mathematical ability is limited. He points specifically to the 21 December 1989 report of an educational evaluator regarding plaintiff. Tr. 168-75. Among other limitations in the mathematical area, the report found that plaintiff had difficulty with division and certain other arithmetic operations. Tr. 171-72.

Plaintiff is also correct that the hypothetical the ALJ provided to the VE did not refer expressly to any limitations in plaintiff's mathematical ability. *See* Tr. 49. The hypothetical reads:

> Let me pose a hypothetical question to you. Assuming an individual age 37 with a l0th grade education. Let's assume an exertional standpoint of light work. Standing and walking six hours, sitting six hours, lifting, carrying, pushing, pulling 20 pounds occasionally, 10 pounds frequently. No more than frequent stooping, crouching, kneeling and crawling. The individual would be limited to performing [SRRTs] and by that I mean if you applied common sense, understanding to carry out instructions in written, oral or diagram form, few problems involving several concrete variables in or from standardized situations. The individual would also be unable to work at jobs requiring complex decision making, constant change or dealing with crisis situations. With those criteria do you find that there would be occupations that such an individual could perform?

Tr. 49.

To be sure, the hypothetical does state that plaintiff is limited to SRRTs and unable to perform jobs requiring complex decision making. Tr. 49. But these limitations suggest limited overall educational and intellectual development, and do not focus specifically on plaintiff's mathematical ability.

The hypothetical also indicated that plaintiff had a tenth grade education. Tr. 49. This portion of the hypothetical implies that plaintiff's mathematical ability is at the tenth grade level. The educational evaluator's report, again, upon which plaintiff relies, states that his mathematical skills were at grade 5.9 level. Tr. 174. Thus, based on this evidence, the hypothetical tends to affirmatively overstate plaintiff's mathematical ability.

The Regulations recognize that the numerical grade level is to be used to determine educational abilities only if there is no other evidence contradicting it, which, as discussed, there is in this case. 20 C.F.R. § 416.964(b). The ALJ's hypothetical arguably ran afoul of this provision. More fundamentally, the hypothetical arguably did not include all limitations on

plaintiff's ability to perform work activities, as required. *See* 20 C.F.R. § 416.945(e); *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("In order for a [VE's] opinion to be relevant or helpful . . . it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.").

Plaintiff has failed to show, however, that any such errors are material. Two of the three jobs the VE found plaintiff capable of performing, cleaner/housekeeper (DOT code 323.687-014) and photo copy machine operator (DOT code 207.685-014), require only level 1 mathematical development according to the DOT. *See* 20 C.F.R. § 416.966(d) (recognizing the DOT as a source of "reliable job information"). This level entails the ability to: "Add and subtract two digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound." DOT, app. C § III, def. of "01 Language Development." Notably, this description states the maximum ability required for mathematical development level 1. "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." Soc. Sec. Ruling 00-4p, 2000 WL 1898704, at *2 (4 Dec. 2000); *see also Closson v. Astrue*, No. C 06-4095-MWB, 2008 WL 504013, at *6 (N.D. Iowa 21 Feb. 2008). Common sense would suggest that the degree to which the cleaner/housekeeper job in particular would require use of mathematical skills would be minimal and at the lower end of mathematical development level 1. *See Martin v. Soc. Sec. Admin. Comm'r,* No. 1:09-cv-00618-JAW, 2010 WL 5364672, at *5, *6 (D. Me. 21 Dec. 2010) (rep. & recommendation by mag. judge), *aff'd*, 2011 WL 285688 (25 Jan. 2011).

In any event, mathematical development level 1 corresponds to no more than a fourth-grade level of mathematical ability. *See, e.g., Dana v. Astrue*, Civ. No. 09-514-BW, 2010 WL 3397465, at *5 (D. Me. 24 Aug. 2010) (rep. & recommendation by mag. judge) (holding that third-grade level mathematical ability would be sufficient for performance of cleaner/janitorial job in issue requiring mathematical development level of 1), *aff'd*, 2010 WL 3702633 (13 Sep. 2010); *Hastings v. Astrue,* No. 08 C 5041, 2010 WL 1609963, at *10 (N.D. Ill. 16 Apr. 2010) ("A mathematical development score of 1 requires only simple arithmetic—which someone with fourth-grade math skills could do . . . ."); *Martin,* 2010 WL 5364672, at *5, *6 (holding that third-grade level mathematical ability would be sufficient for performance of jobs of vehicle cleaner, grocery bagger, and sandwich maker requiring a mathematical development level of 1); *Hoskins v. Astrue*, No. 07-82-GWU, 2008 WL 108767, at *5 (E.D. Ky. 9 Jan. 2008) (holding that third-grade level mathematical ability would be sufficient for performance of same cleaner/janitorial as in *Dana* and assembler job requiring mathematical development level of 1); *Hernandez v. Barnhart*, 203 F. Supp. 2d 1341, 1349 n.7 (S.D. Fla. 2002) (citing testimony by expert that "[t]he mathematical development for level 1 is a fourth grade level or below"). As indicated, the report upon which plaintiff relies places him well above this level. Specifically, plaintiff's mathematical ability would exceed this level by 1.9 grade levels assuming the two jobs in issue required the maximum skill level under mathematical development level 1. The degree by which plaintiff's mathematical skills exceed those actually needed would be even greater, of course, if these jobs were deemed to require less than the maximum skills at level 1.

The VE testified and the ALJ found that with respect to both the cleaner/housekeeper job and the photo copy machine operator job there are up to 2,000 positions in North Carolina and up to 100,000 in the United States. Tr. 30 ¶ 9; 49. Therefore, even if plaintiff were deemed to have

the limitation in mathematical development he claims, there would be a sufficient number of positions for each job alone to satisfy the requirement at step five of the sequential analysis that there exist jobs in significant numbers in the national economy that plaintiff is capable of performing. *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (noting that 110 positions was sufficient to satisfy this requirement).

Thus, plaintiff has failed to show that the omission of his alleged limitation in mathematical ability from the hypothetical caused him any harm. The court accordingly rejects plaintiff's challenge to this portion of the ALJ's decision.

### F. Determination of Plaintiff's Credibility

Plaintiff testified at the hearing that he was unable to work because of back pain and numbness in his legs. Tr., *e.g.*, 27 ¶ 4; 41. He also testified that he has a curve in his spine causing constant pain. Tr. 27 ¶ 4; 48. He states that he is unable to do any activities or bend down without pain. Tr. 48. He reported that medication does not relieve his pain. Tr. 27 ¶ 4; 47, 48. The ALJ presented a summary of plaintiff's testimony in his decision. Tr. 27 ¶ 4.

The ALJ found plaintiff's allegations of physical limitations to be less than fully credible. Tr. 27 ¶ 4; 28 ¶ 4. Plaintiff argues that the ALJ erred in making this determination. The court disagrees.

As noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id*. at 594-95. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Id*. at 595. The ALJ's "'decision must contain specific reasons for the finding on credibility, supported

by the evidence in the case record.'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996)); *see also* 20 C.F.R. § 416.929 (setting out factors in evaluation of claimant's pain and other symptoms).

In assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 27 ¶ 4. At the second step of the credibility assessment, the ALJ found that plaintiff's testimony was not fully credible. He stated that "the claimant's statements concerning the intensity, persistence and limiting effects of . . . [his alleged] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." Tr. 27 ¶ 4. Similarly, he stated that "[t]he undersigned is not persuaded that the claimant is wholly credible regarding his alleged factual limitations." Tr. 28 ¶ 4.

The ALJ provided specific reasons for his credibility determination that are supported by substantial evidence of record. First, the ALJ explained that plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." Tr. 27 ¶ 4. He elaborated that the treatment he received on two occasions (June 2009 and April 2010) in the emergency room for back pain was routine and conservative; he has not received ongoing treatment with a primary physician or specialist; and there is no evidence that he has received physical therapy, steroid injections, or had surgery. Tr. 27 ¶ 4; *see also* Tr. 23 ¶ 2.

The ALJ also explained that plaintiff's "alleged limitations exceed those that would be associated with the findings of his nerve conduction study, x-rays, and physical examinations." Tr. 28 ¶ 4. The ALJ reviewed each portion of the evidence to which he refers. Tr. 23 ¶ 2; 27 ¶ 4; 28 ¶ 4.

With respect to the nerve conduction study, performed on 7 May 2010, he notes that it "revealed chronic right lower extremity lumbosacral radiculopathy, mainly at L5-S1." Tr. 28 ¶ 4. Plaintiff argues that there is nothing in these results that would show "a layman" that plaintiff's pain was less than he alleged. (Pl.'s Mem. 10). An ALJ is not, of course, a layman when acting as an ALJ, but is charged, in this context, with the task of evaluating whether the objective evidence is consistent with the intensity of the symptoms a claimant alleges. The nerve conduction study results are, on their face, supportive of the ALJ's determination at step one of the credibility analysis that plaintiff does have a medically determinable impairment—lumbar degenerative disc disease with radiculopathy—that can reasonably be expected to cause symptoms of the type alleged by plaintiff. *See* Tr. 27 ¶ 4. Plaintiff has, however, made no showing that the test results are consistent with the disabling level of pain he alleges.

The x-rays to which the ALJ refers include those taken at the direction of treating orthopedist E.O. Marsigli, M.D. on 28 April 2010. Tr. 27 ¶ 4; 299. As the ALJ notes, they showed that plaintiff's lumbar spine was unremarkable and that there was no curvature of the spine. Tr. 27-28 ¶ 4; 299.

As to the physical examinations, the ALJ elaborates that plaintiff's "orthopedic examination was essentially normal, and he had a negative straight leg raising test.[7]" Tr. 28 ¶ 4. The foregoing x-ray was part of the orthopedic examination to which the ALJ refers. *See* Tr. 27-28 ¶ 4. As the ALJ notes, Dr. Marsigli found that plaintiff's heel-to-toe gait was very good and that he was intact neurologically. Tr. 27 ¶ 4; 300. Dr. Marsigli concluded that plaintiff had some

---

[7] In this test, the doctor raises a leg of the patient with the knee straight while the patient lies on his back and, if the patient feels pain down his leg and below the knee, the test is positive for a herniated disc. *See* OrthoInfo (site of the American Academy of Orthopaedic Surgeons), "Straight leg raise (SLR) test" in "Tests and Diagnosis" section of "Lumbar Disk Herniation," http://orthoinfo.aaos.org/topic.cfm?topic+A00534 (last visited 6 July 2012).

limitations because of the condition of his back and that he simply needed therapy, not narcotics or surgery. Tr. 27 ¶ 4; 300.

The negative straight leg raising was obtained in an examination by DDS consulting physician Maqsood Ahmed, M.D. on 9 December 2008. Tr. 28 ¶ 4; 26 ¶ 4; 216-19. Dr. Ahmed's examination also showed that plaintiff had no spine deformities. Tr. 26 ¶ 4; 219. He assessed plaintiff as having a history of back pain without neurological deficit. Tr. 26 ¶ 4; 219.

In further explanation of his credibility determination, the ALJ pointed out that "the record does not contain any credible opinions from treating or examining physicians indicating that [plaintiff] is disabled or even has limitations greater than those determined in this decision." Tr. 29 ¶ 4. In a similar vein, he had noted in discussing plaintiff's RFC that "no treating or examining physician has found [plaintiff] physically unable to perform less than the full range of light work." Tr. 26 ¶ 4.

The ALJ explained that he also considered plaintiff's alleged activities of daily living in making his credibility determination but for two reasons did not find them strong evidence supporting plaintiff's credibility. Tr. 28 ¶ 4. One was that plaintiff's reports of his activities are not objectively verifiable. Tr. 28 ¶ 4. The other was that the medical evidence could not account for limitations of the degree claimed by plaintiff.[8] Tr. 28 ¶ 4.

Plaintiff contends that the ALJ impermissibly required him to produce objective evidence of his pain. He did not. Instead, as the ALJ's thorough analysis shows, he evaluated whether the intensity and limiting effects of the pain alleged by plaintiff were consistent with the objective

---

[8] The ALJ also cited in support of his credibility determination the RFC conclusions of the DDS consulting physicians. Tr. 29 ¶ 4. The court deems the ALJ to be referring to the mental RFC assessments of the DDS consultants (Tr. 234-37, 247-50) since he earlier stated that he gave little weight to the opinion of a DDS consulting physician that plaintiff had no exertional or other physical limitations because the consultant, whose physical RFC assessment is dated 6 April 2009, lacked subsequent medical evidence showing that plaintiff does have limitations (Tr. 26 ¶ 4; 239-46).

medical evidence, as well as the other relevant evidence of record. The applicable law not only permitted, but required, the ALJ to make this analysis. See 20 C.F.R. § 416.929(c)(4); Craig, 76 F.3d. at 595-96.

It is apparent that the ALJ did give some weight to plaintiff's complaints. The ALJ found expressly that plaintiff's lumbar degenerative disc disease with radiculopathy is a severe impairment and that he is restricted to light work, subject to significant limitations, rather than work at a higher exertional level or even the full range of light work. Tr. 25-26 ¶ 4.

Thus, the court concludes that the ALJ's credibility determination was lawful. It accordingly rejects plaintiff's challenge to this determination.

### III. CONCLUSION

For the foregoing reasons, the court finds that the final decision by the Commissioner applied the correct legal standards and is supported by substantial evidence. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days, or such other period as the court directs, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 6th day of July 2012.

James E. Gates
United States Magistrate Judge